L.L.C., Moran. It's an unusual first name, I don't think I've seen that. Cullum, Irish, your honor. May it please the court, good morning. My name is Cullum Moran of Hogan Lovells on behalf of Jaguar Land Rover North America. This case is really a commercial dispute between two sophisticated parties about the interpretation of a contractual agreement between them. Our position is that it isn't a case that's appropriate for treble damages and certainly not on summary judgment, and I'd like to take you through our reasoning on that. The standard to award, let me step back and talk just a little bit about the procedural history. Audubon is a dealer of Jaguar Land Rover dealer among other brands. My client Jaguar Land Rover is the U.S. distributor of Jaguar Land Rover vehicles in the United States. They have a contractual relationship between them. They had a dispute about an incentive program called Business Builder. Audubon filed a complaint with the Texas Department of Motor Vehicles. We do have all that background. This case came through to the district court ultimately on a DTPA claim, a Texas Deceptive Trade Practices claim, based on a code violation. So the Texas code says that a dealer may bring a DTPA claim if there is a finding at the board that the manufacturer had violated statute. Here, really the question on appeal really focuses largely around the treble damages issue. Our position is that under the law in Texas, there is a very high standard to demonstrate an entitlement to treble damages, and that standard is knowingly. Here, that Jaguar Land Rover had to have an actual awareness that what it was doing was unfair or deceptive at the time it took the action. Is that the only issue on appeal, from your view, is whether or not to impose treble damages? That is largely the issue. I do think that there are two ancillary issues on appeal. The issue of exhaustion, I do believe. It certainly was briefed. Exhaustion is complicated here. In some ways, its importance has been reduced by the fact that the Texas Court of Appeals has now affirmed the board decision. It is still our position in favor of Autobahn. It is still our position that, number one, Autobahn hadn't exhausted at the time summary judgment was filed. Two, the reason the exhaustion issue is still of relevance to us in the case is that the district court, one of the reasons supporting the finding of treble damages, was that Jaguar Land Rover continued to hold these funds after the Texas board had ruled. Our point was the Texas board ruling was not final because Autobahn hadn't exhausted its administrative remedies. We had never been ordered to turn over the funds, but my point is that the exhaustion doctrine is tied into the treble damages in the sense that it— When did you make that deposit of money? As I recall, you deposited the base amount of the treble damages into the—or you put those aside. We gave them to the dealer, Your Honor, to Autobahn. We gave it back to them. We did, during dependency of the district court case. Has this issue come up with Autobahn with other dealers, not just Jaguar? Do you know? Which issue, Your Honor? The issue of the contracts? Yeah, that you can't—it involves leasing companies. Oh. I don't know, Your Honor. I wouldn't be surprised that it hasn't. So in the luxury car market, Autobahn has various brands. Jaguar Land Rover is a luxury brand. Jaguar Land Rover has a policy that Autobahn is well aware of, frankly. I shall say by context, I have had litigation for Jaguar Land Rover against Autobahn for more than a decade. This is about the seventh case between us. If you're successful in getting it reversed, does it go back to the board or the district court? It goes back to the district court for really a finding about whether treble damages are appropriate because we have given back the principle, the $317,000, we've given back. The Texas Court of Appeals has affirmed the board ruling. We don't claim any entitlement to that $317,000 anymore. We have given it back to Autobahn. Really, if it goes back down to the district court, it'll be back down to the district court on the treble damages issue. What will the district court do? Resolve a fact question? The district court should resolve a fact question, Your Honor. Try that. A jury or the judge? Our position is it should be tried by a jury, Your Honor. There is a jury demand in the case. I believe that there is, Your Honor. I'm sorry. I believe there is a jury demand. I'd be sure about that. Either way, Your Honor, our point is that there should be an evidentiary hearing. So this is a case in which actually in neither the board case nor in the district court case, no one has conducted any discovery on either side. On the knowingly issue. I'm sorry? On the knowingly issue. On any issue, Your Honor, but on the knowingly issue in particular. Our point is that Audubon will have to put in evidence that my client knew and under the St. Paul case, Texas Supreme Court case, knowingly means. It's even higher than actual knowledge in some ways, right? So the Texas Supreme Court has said that Jaguar Land Rover has to have said to itself at some point, I know what I'm doing is wrong and I'm going to proceed anyway. That's what the Texas Supreme Court in the St. Paul case says is the standard for knowingly violating the DTPA, that my client, that Audubon has to put in evidence that my client said to itself. This arose in factually as a chargeback. I'm sorry, Your Honor? This arose as a chargeback on inspection. How long did the, what period of time did these charges that were in dispute accrue? Over what period of time did those charges? One year approximately. And during that year, you were paying those monies. That's correct, Your Honor. Then you went in and an audit went in. What is your, what does the evidence show with regard to the occasion for the audit? Are they routine? And do you have this program in place in other places? It's a nationwide program, yes, Your Honor. Auditing is routine so that it's a routine process to audit a dealer. Audits are governed by state law. Under the program itself and the contractual arrangements, is there any reference in the paperwork itself to the fact that these are subject to audit and chargeback? Yes, Your Honor. And what do they provide? So they provide that if the payments are made that are not in compliance with the program rules, that the payments are subject to chargeback. And have there been other audits and other occasions with this same dealer? There have been other audits with this same dealer, yes. Involving the same program or a different program? Same program. Yes, Your Honor. Getting back to the exhaustion issue, the fact that that's been cured can't retroactively work here, can it? I mean, you've got the Subaru case and exhaustion under Texas law is jurisdictional. So even if both sides agree, I'm asking you this so you can answer either way you want, but even though both sides may agree, I'm not sure that we're in the posture that we can issue a merits ruling rather than sending it back to Judge McBride to deal with exhaustion. Your Honor, I agree with you. I believe that while the facts have caught up with us a little bit in terms of the Texas court of appeals, the reality is that at the time Judge McBride issued his granted summary judgment in the case, the plaintiff in that case, Audubon, had not exhausted. And that fact cannot be changed. They had not exhausted under Subaru. So what do we do? The case should be remanded back down, Your Honor, reversed and remanded. To Judge McBride? To Judge McBride. To do what? To determine whether or not treble damages should be issued on a factual record. So the same record? No, Your Honor, because there was no—and our position is that there was no record. So there was no evidence put in on the knowingly standard. The only evidence put in on summary judgment was the board decision. Remand would be for the purposes of meeting the exhaustion demand. Is that correct? How do you meet the exhaustion demand by sending it back to the court who got jurisdiction only after exhaustion? How do you send it back? I'm not sure I understand the question, Your Honor. The— Judge Shacroff may be asking whether Judge McBride would have to send it down for some kind of exhaustion. Is that right? Yeah. What's curative about the exhaustion? If the problem is an exhaustion problem, send that. So it is that you had not exhausted before the administrative board before you got to Judge McBride for it. And so we won't send it back to Judge McBride. Now, what does he do? He still doesn't have an exhausted case. He does now have an exhausted case. If you go back to what—how do you exhaust? It's been exhausted now because the Texas Court of Appeals has affirmed the board decision in Audubon's favor. At the time summary judgment was granted, that case was unappealed. So we go back down and enter summary judgment again? We go back down and enter summary judgment again, perhaps, Your Honor. Perhaps. That gets to our point, really, about the trouble damages. You think Judge McBride is going to— No, I don't think Judge McBride is going to see it any differently, except that, Your Honor, I will say that Judge McBride, one of the reasons he found trouble damages is he found that our exhaustion argument was completely invalid and that our conduct after the board proceeding was a basis for awarding trouble damages. So that's what he found was one of the bases. If he was incorrect about exhaustion, and, in fact, we were correct— I don't mind the award itself. But, Your Honor, in terms of the evidence, really, as I say, our main contention here surrounds trouble damages. Really, to be very frank, as a practical matter, it's the only thing that really is of consequence in the case. We've given back the $317,000. We don't claim an entitlement. We've lost. We've lost before the Texas court. It went up on appeal. It was affirmed, and that's the end of that. Really, our issue is the $317,000—the troubling of that $317,000, $900,000 here, where there was no evidence put in on summary judgment, number one. The only evidence in the record was the board decision. And I would direct Your Honors to—it starts at page 45 of the record, which are the findings and facts and conclusions of law of the board in that underlying case. There is not a single one of them that could be read to say that we knowingly did anything. The board simply didn't address the issue of whether we knowingly did or didn't do anything. The only thing that even comes close to touching on unfairness is the board did find that we violated Section 2301.468 of the Texas Code through the charge back and that it was unfair and inequitable. So the board did find that it was unfair and inequitable. But I think it's a very key point here and really ties back into our exhaustion argument. Audubon abandoned that 468 argument on appeal to the Texas Court of Appeals. So the only thing in the record from the board proceeding that said anything about our conduct being unfair was abandoned by Audubon on appeal. So if we look back at the record and you can scour the administrative decision for any evidence that our conduct was knowing, the only thing that said unfair was the 468 violation. Audubon conceded on appeal, as did the State of Texas, that the board was incorrect to find that we violated 468. So that up on appeal, there is no evidence, is our argument, to support a finding of treble damages. Certainly not at the standard. The other issue that we have with what Judge McBride did is Judge McBride in his decision, we argue, as you know from our briefs and I don't want to repeat myself, that Judge McBride applied an incorrect summary judgment standard. So he looked at the evidence and what he said is that, quote, the most reasonable inference to be drawn from the summary judgment record is that Jaguar knew that its conduct was false, etc. So our argument is that is not an appropriate standard for summary judgment. Any inference in the case should be drawn in favor of the non-moving party. So the fact that there could be inferences drawn, really, Judge McBride is acknowledging here that based on the evidence before him, really, which was just the board decision, there really isn't any other substantive evidence, other than Jaguar Land Rover had put in at the board a declaration from a Michael Stern that talked about the contracts. But the board decision really is the evidence before the judge. He says I've looked at it and the most reasonable inference I draw from that favors Audubon and I'm granting summary judgment. Our argument is that is not an appropriate standard for summary judgment, that any inference should be drawn. If there is some doubt in his mind, the inference must be drawn in favor of Jaguar Land Rover on summary judgment, and then the case should be tried. Now that I think about it more, Your Honor, there is not a jury demand in this case, so it will go back before McBride and it would be tried before McBride on the merits with witness testimony, is our point that the case is just not one that is appropriate for summary judgment. Very briefly, there is a breach of contract claim in the case. It is largely moot. The damages on the breach of contract was $317,000. We've paid the $317,000. I would say that about three weeks ago, the Fifth Circuit, in a related case between the parties, issued a decision finding that the board, we had brought in a breach of contract counterclaim. This court found that the Texas Motor Vehicle Board has exclusive jurisdiction. So I would point out that under the Fifth Circuit's ruling from three weeks ago in the related case, Autobahn's breach of contract case fails. The Fifth Circuit has ruled that that case is now within the exclusive jurisdiction of the board. But in any event, as a practical matter, it's moot, as we've paid the money back anyway. I'll reserve my time. Yes, you've saved time for rebuttal, Mr. Moran. Thank you. Thank you. May it please the Court, Jeff Levinger for Autobahn Imports. I want to clarify one point right off the bat. Counsel talked about a violation that was abandoned. That's not true. The board found a violation 2301467 requiring adherence to unreasonable sales standards. That was affirmed by the Austin Court of Appeals. And that, in fact, is what the award of treble damages is based upon, that violation of 2301467. Briefly on exhaustion, to call it exhaustion is really a misnomer. Autobahn exhausted its administrative remedies. It filed a complaint before the board. It got a determination from the ALJ. And it got a final order from the board. The argument really is that we should have awaited the conclusion of their appeal to the Austin Court of Appeals. That appeal is now over. It's done. And I submit that that exhaustion argument is moot. It's not a question of subject matter jurisdiction. At best, it's a question of abatement, whether the district court should have abated pending the conclusion of their appeal to the Austin Court of Appeals. Well, the question is whether the district court, at the time it entered summary judgment, was empowered to do that. And I don't see that it was. At that time, address the situation on the day the summary judgment was entered. Well, first of all, Your Honor, I submit that the question of whether we had to await the conclusion of their appeal was more of a question of abatement. And they didn't move to abate. You're playing the blame game, and I'm not interested in that, at least right now. The question is on the day when Judge McBride entered summary judgment, was he – did he have jurisdiction? Was he entitled to – was he empowered to do that as of that moment, given the fact that in Texas, exhaustion is jurisdictional? Well, yes, he was, because under 2301.755, as well as Government Code 2001.176, it provides that a substantial evidence appeal, which is what they had taken, does not affect the ability to enforce a final board order. And that's precisely what we were doing. We were using 2301.805 to enforce, through a damages suit, a final board order. And there's no question but that it was a final board order. They admitted it was a final board order. Under Government Code 2001.144, it was a final board order. So 2301.755 applies on its face, and it says that they're – And the final board order had already been entered at that time. Yes, it had. Yes, it had. In fact, that's what they were appealing from, the final board order, appealing to the Austin Court of Appeals. So – Was it still final even though there was an appeal? Yes, and that's what Government Code 2001.144 says, and that's what Government Code 2001.176 says, and even more specifically, that's what Occupations Code 2301.755 says. It says dependency of an appeal, a judicial review appeal, does not affect the ability to enforce a final board order. And that's precisely what we were doing when we brought the action under 2301.805. So, yes, Judge McBride did have jurisdiction, although I'm not even sure that particular issue is a question of subject matter jurisdiction. Trouble damages, I guess the threshold I would point out that under this particular statute, 2301.805, there's no requirement of even proving knowingly. This suit was brought under 2301.805. It's a DTPA tie-in statute. There are 34 other tie-in statutes in Texas. This one's unique, though, because it says notwithstanding any other law, a party in the position of Audubon is entitled to recover any remedy, any remedy under the DTPA, and it requires a showing of only two things, a violation under Subchapter J, which is what we proved, 2301.467, the violation found by the board is a Subchapter J violation, and damages. And once you prove those things under 2301.805, you're entitled to trouble damages. Notwithstanding any other law, you're entitled to any remedy. Does Audubon have other cases like this throughout the country? I don't believe so, Your Honor. Other dealerships? I don't believe so. We've tangled quite a bit with Jaguar in this particular case, but the record's very unclear about any other cases of this nature. I'd also point out that they concede that we don't have to prove that we're a consumer. We don't have to prove that we're a consumer. We don't have to prove any sort of notice under the DTPA. And likewise, I think it follows, we don't have to prove the knowingly element. As I mentioned, there are 34 other DTPA tie-in statutes. None have this particular provision about notwithstanding any other law, an entitlement to any remedy. And the reason, I think, reflects the legislature's view that there's a disparate bargaining position between automotive dealers in this state and manufacturers and distributors. In fact, if you look at 2301.001, it says, this statute, referring to the entire occupation's code, shall be liberally construed to effectuate its purpose, and the purpose is to protect automotive dealers and their consumers from potentially abusive and unfair practices by manufacturers. So, in short, we didn't have to prove knowingly. But if we did, I submit to you that the evidence conclusively establishes it. The question is not, as they say in their brief from time to time, whether or not they knew that they were violating the code. It's not whether they knew that they were violating the DTPA. The question is whether they had actual awareness, which the statute says can be inferred from objective manifestations, that the act of practice, which here is the charge backs, constituted a false or deceptive or unfair practice. And here I think unfair is the most viable prong. And what authority would they have looked to at that time to determine that the answer was yes? That it was an unfair practice? Well, I think they would look to the manual and to the bulletin, which combined represented the business builder contract. And I think importantly, Judge McBride stated, and I think it's correct, he said they all but acknowledged that if their exhaustion argument fails, which it did fail, that the findings and conclusions of the board support the relief that Audubon is seeking. There would not have been then, in answer to my question, any case law that they would or could have looked at? No, Your Honor, no. Nothing like that. I mean the business builder contract was a unique contract consisting of the manual and the bulletin. Importantly, though, here's another procedural aspect of the case that makes this unique. Under 2301-805-B, the court was required to give deference to the findings and conclusions of the board. And that, in fact, is what the court did. I'd also point out that their summary judgment response had really no evidence whatsoever, had nothing really in response to the board's finding of a violation in unreasonable practices. They tendered papers showing that they'd appeal to the Austin Court of Appeals. There was never any dispute about that. They tendered a declaration saying, well, we've now paid, credited back the charge back. I'd point out that was after three years, not one year, but three years, and they also did so conditionally. It was a conditional charge back. The summary judgment here was also warranted by the evidence of their conduct at three separate times. At the time they took the charge back, their position before the board, and their position after the board issued its final ruling, all of those things I think demonstrate that they had an actual awareness that the actor practice of taking and retaining this charge back was unfair. The charge backs, of course, involved their complaint about our sales to leasing companies. And that was also an issue in the first appeal that was decided about a month ago by this court. The argument according to them was that, well, you hadn't delivered the vehicles to the end user. The end user is a term you see throughout these documents. And they relied upon, at least in their audit, they relied upon the lease contracts. And they said, well, the lease contracts show that it's the leasing company that's making the delivery to the end user. Well, that's just not true. There's no evidence supporting that contention at all, and they backed off it before the board. They didn't rely on the lease contracts at all. Instead, they made different arguments, which I'll talk about in a moment. But I think the fact that they changed positions the way they did is evidence of an actual awareness that the actor practice was unfair. And this court, I think, reached that conclusion in the One Beacon case where the insurer made some explanation at the time it refused payment, later changed positions and said, well, we withheld the payment because we had a defense coverage. And this court held, well, it's that change in position, that inconsistency, provides some evidence of falsity or knowing unfairness. Their argument before the board, I think, show a further demonstration of actual awareness because, frankly, those arguments were specious. All the arguments they made in front of the board were specious. Both the board and the Austin Court of Appeals held that their so-called personal delivery criteria as it applied to our sales to leasing companies was unreasonable. That's the word used by the Austin Court of Appeals and the board. It was unreasonable, unfair in other words, and I think their conduct shows that they knew that. First of all, they ignored the plain language of their own contracts. Their own contract says an approved leasing company purchasing to lease is an end user. It could not be clearer. An approved leasing company purchasing to lease is an end user, and therefore sales to leasing companies are eligible for the incentive program. They then submitted what I think I would charitably call a false affidavit from their audit manager where he said, well, approved leasing companies means fleet leasing companies, and the board found no support for that whatsoever. There wasn't anything he referred to that supported that interpretation. It was made up after the fact in an effort to support a charge back that never should have been taken in the first place, and I think that is additional evidence of awareness that their active practice was false. Then, to top it off, they relied upon a 2001 settlement agreement between these same two parties. That settlement agreement had nothing whatsoever to do with either leasing companies and nothing whatsoever to do with end users. It had to do with something entirely different involving what they called a handover policy where we hand over a vehicle to a retail purchaser. It had nothing to do with leasing companies. It had nothing to do with anything at issue in this particular case, and the board noted that, and I think that's yet further evidence that they knew that their conduct was unfair. Finally, I think their conduct after the board issued its final ruling is even additional awareness of unfairness. They say that they make a big point about paying back the money. Well, it was three years after the fact, and it was paid back with conditions, but worse than that is the fact not only do they keep our money for that period of time, but they then brought a counterclaim, a counterclaim seeking still more chargebacks for additional years, future years, based on the very same arguments that the board had already rejected, and that's the case that Judge McBride dismissed, and that's the one this court affirmed about a month ago, the dismissal of those counterclaims, but I think they show additional evidence of awareness that their acts of practices were unfair. So assuming, even assuming this court holds that we're required to prove knowingly, which I don't think we were under the plain language of 2301-805, I submit that the evidence based on the board's findings, all affirmed by the court of appeals, conclusively shows that their act of practice was unfair. Very briefly on breach of contract, the court doesn't even need to reach the breach of contract, and the reason is because we brought the breach of contract claim simply to get. I assume that your narrative of what happened supports that award. Why isn't that an ultimate question for the judge to decide with all that before him or to a jury if there's one that's been demanded? Which question are you referring to, Judge McBride? You have given us a narrative of the conduct of the parties across this, and as being sufficient to support the determination by the board. The board cannot award damages. Correct. And my question is, if you send it back to Judge McBride, what she asks us to do, I guess, is to affirm straightaway. Just affirm straightaway. Right. But where is the determination that your narrative is the ultimate determination of the true narrative here that's been determined? I mean, I don't mean it's false, but there may be other ways to interpret the same set of facts. Well, I don't think so, Your Honor. We have the board findings, and to be sure, the board didn't— They get some deference, I guess, under the law. 2301-805-B, a court says must give deference to the findings and conclusions of the board. So we have those. But if it says just deference, that means that they have an opportunity to assume before Judge McBride to persuade him that they shouldn't enjoy deference. I'm trying to get in my head about whether it's weird to end this thing or to send it back to Judge McBride and what would Judge McBride do. But if it's a deference standard and only Judge McBride can award the matters, I guess the answer is he gave deference to them. I think that's exactly what he did. He gave deference to them. They found a violation of 2301-467 requiring adherence to unreasonable sales standards. They, to some extent, their summary judgment response quibbled with that, although most of their summary judgment response was really devoted to the exhaustion argument. They said, Judge, at an appropriate time, you can give deference to these findings and conclusions, but now is not that time because they contended— So the question narrows down to whether there's a genuine issue of material fact. I think that's ultimately where it is, and I submit there is no genuine issue of material fact. Certainly none created by them in their response, coupled with the fact that we have board findings now affirmed that get deference, and all of those point to the fact that their taking and retaining the chargebacks was unfair, false, deceptive, or unfair. And I think unfair is the applicable prong here, particularly when you consider that the Court of Appeals found that the very same act was unreasonable. This applying their personal delivery criteria as it applied to our sales to leasing companies, the board in the Court of Appeals said it's unreasonable, and I submit that they knew that by virtue of the specious arguments they were making before the board. Finally, breach of contract, I don't think the court even needs to address that because it was just a mechanism of awarding us economic damages. And I think Mr. Moran agrees with you on that, if I heard him right. I thought he was saying that, but then again, I thought I heard him say that by virtue of the Court of Appeals' opinion a month ago that we won, somehow that that meant that we don't win on breach of contract. I thought that's what I heard him say, but I could have misinterpreted it. I heard something about exhaustion in there. But I think the point I want to make is that economic damages are recoverable under the DTPA claim, and they do not challenge on appeal the DTPA claim at all. So the court doesn't even need to reach breach of contract. It can just affirm the economic damages, which they admit they've now paid, although they've not obeyed Judge McBride's command to deal with the conditions. So far as I know, those conditions are still in existence. But that said, I think the evidence supports summary judgment on breach of contract anyway. We conclusively proved the element of performance. The only element of performance at issue was whether we delivered the vehicles to the leasing companies, which were determined to be end users, and that was conclusively proven. Yes, we did deliver the vehicles to the leasing companies. The evidence conclusively established breach because, again, sales to leasing companies are eligible for the incentive payment. That's established by the board, and they took the charge backs. They didn't honor their own agreement that sales to leasing companies would be eligible for the incentive payment. So the evidence conclusively established performance and breach, therefore breach of contract, although I submit that the court need not even reach that, given the unchallenged determination of a DTPA violation that supports the same economic damages. That would conclude my argument, unless the court has any further questions. Thank you. Thank you, Mr. Levinger. Mr. Moran. Please start by responding to the arguments about exhaustion. Sure. Let me read to you from Subaru, Your Honor. I'm quoting from page 224 of that decision. The board's decision becomes, quote, unquote, final, open print, and thus a party has exhausted administrative remedies, close print, for the purposes of a party's pursuing damages in a trial court for code-based claims. That is the DTPA claim. Number one, after the time to seek substantial evidence review of the board expires if no affected person seeks such review, or two, after an affected person who seeks judicial review exhausts the substantial evidence review avenues. Which means going to state court? Which means taking the court up to the Third Court of Appeals in Texas, which is what we did. So it wasn't final until? It was not final under Subaru. And I would say that Audubon has cited 2301755, saying that that is a provisional law that says that the enforcement of a final order of the board is not stayed by appeal, etc. I would point out two things we said in our papers. They're not really seeking to enforce a board order. The board didn't order any damages or anything like that. The other thing I would point out is even though it has been recodified, if the court looks again at 224 in the section that I just read, the citation that the Texas Supreme Court uses is to that very section of the statute. It has been recodified to 2301755. Of course, Judge McBride said that that's just dictum from Subaru. I don't see how it can be read as dictum. But anyway, the plain pronouncement in Subaru does seem somewhat in conflict with the statutory language. But it seems to me that we would need to follow what Subaru said and that it was not final when summary judgment was entered by Judge McBride. Is that your position? That's our point, sir. Exactly, Your Honor. Thank you. Very quickly on the treble damages issue, I wanted to raise two points in response. Number one, to the issue of whether or not Audubon needs to show knowingly at all. This would really be a sea change in the manufacturer-dealer relationships in Texas. That would mean that for, as the Fifth Circuit ruled just a few weeks ago in our related case, all claims between manufacturers and dealers are within the exclusive jurisdiction of the Texas Motor Vehicle Board. That would mean any time a manufacturer has a dispute with a dealer, there's strict liability treble damages for a violation so that if you appoint a new dealer or terminate a dealer. Well, you know how powerful the dealers are in the Texas legislature. Indeed I do, Your Honor. And that may be exactly what the legislature intended. My point is that, as we say in our papers, they have not introduced any legislative history to demonstrate that that was the intent. There isn't any case that says that. There isn't just reading the clause that notwithstanding the provisions of the law that you're entitled to the remedy. So the remedy is treble damages. I don't dispute that they're entitled to seek treble damages. They still have to meet the standard in the DTPA to get them, is our point. That is that the conduct has to be knowingly. So our point is just that lead-in clause just means they, yes, they can seek treble damages, and if they meet the DTPA standard for treble damages, they can get them. It really is not a reasonable reading for any kind of set aside whether in this case we had a good-faith basis. They say we don't. Take the future case. There is some legitimate and good-faith dispute between a dealer and the manufacturer. The manufacturer loses, under their interpretation, automatic treble damages based on a lead-in clause to 2301.805. The 855, that doesn't seem reasonable. The last thing I would say before my time expires in terms of the substance, really, the narrative that Audubon explained, yes, I would say two things about it. Number one, much of that narrative, the stern affidavit was found to be unreasonable, are not in the findings of fact or conclusions of law of the Board. The only thing that is entitled to deference are those things under the section of the Board decision and starting in the record at page 45, starting with the findings of fact. And our point is that if you scour these findings of fact and the following conclusions of law, there is no evidence the Board didn't address one way or the other way our conduct was knowingly. Whether our position was that we knew what we were doing was wrong, to meet the standard of St. Paul, that at some point we said to ourselves, we know what we're doing is wrong and we're going to proceed anyway. With respect to the post-Board process, we continued to hold the money for a period of time, then we gave it back. That's why, to me, it all ties into exhaustion. How can you say that our conduct was, as a matter of law and summary judgment, wrongful when we had the exhaustion argument? So our request is that it be sent back down to Judge McBride for a trial on the merits of the treble damages issue. All right. Thank you, Mr. Moran. Thank you very much. The case is under submission. Final case for the day.